FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 05, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK L.[1], | No. 1:20-CV-03064-SAB |
|     Plaintiff, | |
|     v. | **ORDER GRANTING** |
| COMMISSIONER OF SOCIAL | **PLAINTIFF'S MOTION FOR** |
| SECURITY ADMINISTRATION, | **SUMMARY JUDGMENT;** |
|     Defendant. | **DENYING DEFENDANT'S** |
| | **MOTION FOR SUMMARY** |
| | **JUDGMENT** |

Before the Court are Cross-Motions for Summary Judgment. ECF Nos. 27, 30. The motions were heard without oral argument. Plaintiff is represented by D. James Tree; Defendant is represented by Lisa Goldoftas and Timothy M. Durkin.

Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382. After reviewing the administrative record and briefs filed by the parties, the Court is now

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

fully informed. For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 27, and denies Defendant's Motion for Summary Judgment, ECF No. 30.

## I. Jurisdiction

On January 28, 2015, Plaintiff filed an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. He alleged disability beginning January 1, 2015. Plaintiff's applications were denied initially and on reconsideration. On February 2, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On October 31, 2018, Plaintiff appeared and testified before ALJ C. Howardf Prinsloo, with the assistance of his counsel, D. James Tree and Robert Tree. Vocational Expert Bob G. Zadow also participated. The ALJ issued a decision on April 3, 2019, finding Plaintiff was not disabled.

Plaintiff requested review by the Appeals Council; the Appeals Council denied the request on April 2, 2020. The Appeals Council's denial of review makes the ALJ's decision the "final decision" of the Commissioner of Social Security, which this Court is permitted to review. 42 U.S.C. § 405(g), 1383(c)(1)(3).

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on May 12, 2020. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if their impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work that

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~2

exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner has established a five-step sequential evaluation process to determine whether a person is disabled in the statute. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

**Step One**: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b), 416.920(b). If the claimant is not, the ALJ proceeds to step two.

**Step Two**: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. *Id.* § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairment is severe, the evaluation proceeds to the third step.

**Step Three**: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering to the fourth step, the ALJ must first determine the claimant's residual functional capacity. An individual's residual functional capacity is their ability to do physical and mental work activities on a sustained

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~3**

basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The residual functional capacity is relevant to both the fourth and fifth steps of the analysis.

**Step Four**: Does the impairment prevent the claimant from performing work they have performed in the past? 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to perform their previous work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

**Step Five**: Is the claimant able to perform other work in the national economy in view of their age, education, and work experience? 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id*.

### III. Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance," *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~4

An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). It "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

### IV. Statement of Facts

The facts have been presented in the administrative record, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized herein.

At the time of the hearing, Plaintiff was forty-four. He has a bachelor's degree from Whitworth University in History, although he has no significant work history. He reported trying to work at a nursery in 2016, but he had difficulty interacting with people. He also tried to work at a plastic bag factory but after touring the factory and watching safety videos, Plaintiff did not think he could do the heavy lifting that was required.

He testified that he spends his days going to the library, reading, and going to AA Meetings.

### V. The ALJ's Findings

The ALJ issued an opinion affirming denial of benefits. AR 17-30. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 28, 2015, the application date. AR 19.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~5**

At step two, the ALJ identified the following severe impairments: anxiety-related disorder, affective disorder, personality disorder, and chronic cervical strain. AR 19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 20. Specifically, the ALJ concluded that Plaintiff did not meet listings 1.04, 12.04, 12.06, and 12.08. Ultimately, the ALJ concluded that Plaintiff has a residual function capacity ("RFC") to perform:

> medium work as defined in 20 CFR 416.967(c) except is limited to only simple, routine, and repetitive tasks with only brief and superficial or incidental interaction with either the public or coworkers, working with things instead of people.

AR 22.

At step four, the ALJ found that Plaintiff has not past relevant work. AR 29.

At step five, the ALJ found that Plaintiff was not disabled and capable of performing work that exists in significant numbers in the national economy, including janitor, press operator, and hand packager. AR 30.

## VI. Issues for Review

1. Whether the ALJ properly assessed Plaintiff's autism at Step Two?
2. Whether the ALJ properly assessed the Listings?
3. Whether the ALJ properly assessed the medical opinions?
4. Whether the ALJ properly assessed Plaintiff's testimony?

## V. Analysis

### 1. Autism Spectrum Disorder

Dr. Paul Schneider evaluated Plaintiff in April 2016. AR 394-405. He made the following diagnoses:

(1) Autism Spectrum Disorder (Asperger's), with behavior disorder, without intellectual impairment, requiring Level I support in the social domain;

(2) Alcohol Use Disorder, severe, in sustained full remission

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~6

    (3) Attention-Deficit/Hyperactivity Disorder, primarily hyperactive/impulsive, mild

    (4) Anti-Social Personality Disorder

    (5) Adjustment Disorder, with mixed anxiety and depressed mood.

AR 403.

    Dr. Schneider completed a detailed assessment of Plaintiff. Immediately, Dr. Schneider noted that Plaintiff appeared rather odd in his demeanor, and he did not appear healthy. AR 400. His affect was tense; he rambled and frequently needed redirection. He had a strong sense of entitlement. He tended to be quite concrete with very poor insight. He felt his brother should give him money just because. He frequently blamed everyone else, with no sense of his own accountability in the problems.

    Dr. Schneider noted it was clear that Plaintiff was quite intelligent. His IQ scores were in the high average range. Yet, Dr. Schneider made the following observation, "What is odd here is that for someone as bright as he is, he is also quite impaired in other areas that are not measured by any testing." AR 401.

    Dr. Schneider believed it "quite clear that Mark is within the autistic spectrum, and probably does have an attention deficit disorder that complicates it." AR 403. Even though Dr. Schneider diagnosed Antisocial Personality Disorder, he also believed that his antisocial behaviors were "more of an artifact of the Autistic Spectrum Disorder."

    Dr. Schneider concluded that Plaintiff "simply does not understand the value of good quality social interactions and relationships. He cannot seem to put together the idea that good work habits and good relationships with coworkers helps one keep a job so that one can earn enough to live on. He has a strong sense of entitlement." Dr. Schneider thought that Plaintiff simply does not get that one must earn their way in this world, noting that Plaintiff "doesn't seem to grasp that one has to work to earn money if one wants to support oneself. There's a huge gap

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

there in the logic that fails him."

Dr. Schneider noted:

> From a perspective of decompensation in work and work like settings, the evidence is quite clear here that Mark is severely impaired. That he has a college degree, no work history, nothing to show for himself, and blames the rest of the work for those problems is a clear testament to that. When you step back from this case, you begin to realize how severely impaired he really is, even though he would seem to be capable of functioning at a high level.

AR 404.

Apparently, Plaintiff indicated to Dr. Schneider that he was interested in attending graduate school. This is what Dr. Schneider said about that:

> Mark's idea of being a college professor is actually a reflection of his delusional sense of competency. His social skills are so bad that it would be a nightmare scenario if he would even get such a job, which is highly unlikely. I know very few graduate schools that would allow him through because of his paucity of social skills.

AR 404

Dr. Schneider concluded that:

> Plaintiff needs to be in a work setting that does not require social skills. That probably means a fairly small group of coworkers who are very tolerant and forgiving, and supervision that is willing to coach him and guide him firmly and not overreact to his gaffes. He is very off-putting in his demeanor, cannot accept responsibility for his role, and blames others easily.

The ALJ did not find that Plaintiff had a severe impairment of autism spectrum disorder (Asberger's), without intellectual impairment, apparently relying on the opinion of Dr. R.A. Cline that Plaintiff does not appear to meet the repetitive behavior criterion for such a diagnosis. AR 20. Additionally, the ALJ gave little weight to Dr. Schneider because Dr. Schneider's opinion was based, in part, on the diagnosis of autistic spectrum disorder. The ALJ also believed Dr.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~8

Schneider's opinion that Plaintiff was disabled was inconsistent with his own findings that Plaintiff showed high average intellectual functioning, average working memory, high average processing speed, and average reading, spelling, and arithmetic skills. The ALJ found Dr. Schneider's opinion inconsistent with Plaintiff's minimal mental health treatments and his relatively benign presentments during appointments, including no distress, appropriate affect, appropriate behavior, and intact cognitive functioning. Finally, the ALJ believed that Dr. Schneider's opinion relied, in part, on Plaintiff's self-report.

The ALJ's findings regarding Plaintiff's severe limitations identified by Dr. Schneider and his rejection of Dr. Schneider's diagnosis of autism spectrum disorder are simply wrong. Instead, they demonstrate a complete lack of respect for the longitudinal record that was before the ALJ.

First, Dr. Schneider provided adequate reasons for this diagnosis, including Plaintiff's social struggles despite his intelligence; areas of strong performance in cognitive functioning; likely disengagement as a child by history; lack of a grasp for relationship basics; failure to grasp the fundamental relational aspects of recovery; aspects of grandiose and narcissistic nature; and failure to respond to bipolar medications.

Second, the ALJ failed to understand that while Dr. Cline believed that Plaintiff did not meet the criteria for a diagnosis of autism spectrum disorder, she did diagnose Plaintiff with Social Pragmatic Communication Disorder[2] Yet, the

---

[2] According to the American Psychiatric Association, Social (Pragmatic Communication Disorder) is a new diagnosis in the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), in order to "more accurately recognize individuals who have significant problems using verbal and nonverbal communication for social purposes, leading to impairments in their ability to effectively communicate, participate socially, maintain social relationships, or

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 9

ALJ did not include Social Pragmatic Communication Disorder as a severe impairment. It is disingenuous on the part of the ALJ to use Dr. Cline's opinion to reject Dr. Schneider's diagnosis, yet seemingly reject or ignore Dr. Cline's diagnosis that was given instead of the rejected diagnosis. Moreover, the longitudinal record supports Dr. Schneider's findings of autism because there are reports of repetitive behavior criterion. For example, Dr. Carstens referred to an evaluation conducted by Dr. Douhtry in 2007 where Plaintiff was diagnosed with dysthymic, OCD, a bipolar disorder and a personality disorder. AR 629. Also, as Dr. Schneider explained, "He does ruminate a lot, and he can be obsessive. It sounds like he has some compulsive behavior regarding touching things." AR 399. Finally, the record indicates instances where Plaintiff reported "repetitive organization in his house" (AR 442), inability to tolerate his eyelids being touched (AR 686), obsessive thoughts (AR 440, 451, 561, 471, 476), compulsive behavior (AR 440) and a change in a living situation was expected to trigger increased anxiety (AR 472).

Third, Dr. Schneider diagnosed Plaintiff with autism spectrum disorder, in part, because of his significant social and emotional limitations, *despite* his

---

otherwise perform academically or occupationally. SCD is characterized by a persistent difficulty with verbal and nonverbal communication that cannot be explained by low cognitive ability. Symptoms include difficulty in the acquisition and use of spoken and written language as well as problems with inappropriate responses in conversation. The disorder limits effective communication, social relationships, academic achievement, or occupational performance. Symptoms must be present in early childhood even if they are not recognized until later when speech, language, or communication demands exceed abilities. https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/DSM/APA_DSM-5-Social-Communication-Disorder.pdf (last visited June 29, 2022).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~10

intelligence. The skills identified by the ALJ that it believed invalidated Dr. Schneider's opinion were taken into consideration by Dr. Schneider when making his diagnosis.

Fourth, the ALJ failed to consider the instances in the longitudinal record where Plaintiff was acting inappropriate, including the mention by his attorney at the hearing that Plaintiff could no longer communicate with the law firms' staff and could only communicate with his attorneys; Plaintiff being inactivated as a patient due to his poor behavior and attitude toward the staff ("Dr. C. has decided not to move forward w tx in our office due to his aggressive attitude towards our staff") AR 364; Dr. Bich Ngoc Nguyen reported Plaintiff arguing with him ("At this point I asked him if he wanted another provider as we were not getting along as everytime I tried to explain something to him he would just say tell me I was wrong. He is in agreement and we will schedule him with another provider in this office") AR 381; Dr. Cline reporting that Plaintiff was difficult to interview and was very upset at the end of the assessment when he was told it would take at least two weeks to obtain the results of the assessment AR 389;

Fifth, the ALJ failed to address that Dr. Bowes also diagnosed Plaintiff with autism following an examination. Dr. Bowes explained her diagnosis was based on Plaintiff's social deficits; lifelong difficulty with peer relationships; failure to recognize social cues; linear and robotic presentation; and difficulty with change that typically resulted in angry outbursts.

The failure to properly assess Plaintiff's diagnosis of autism spectrum disorder (Asberger's), without intellectual impairment is reversible error. This error then was compounded when the ALJ failed to properly assess whether Plaintiff met any of the Listings based this diagnosis. The Court notes the record contains an instance where a medical evaluator noted a *severe* effect on Plaintiff's ability to adapt to changes in a routine work setting (AR 619). Additionally, the record includes instances where medical providers and evaluators identified

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~11

*marked* effect on the ability to perform the following basic work activities: (1) perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances without special supervision (AR 619); (2) communicate and perform effectively in a work setting (AR 619); (3) maintain appropriate behavior in a work setting (AR 619); (4) complete a normal work day and work week without interruptions from psychologically based symptoms (AR 619); (5) marked social skills deficits (AR 595); (6) Marked maladaptive personality traits (AR 389, 595); and (7) marked ability to interact appropriately with the general public (AR 144, 161).

The proper course is to remand for further proceedings. On remand, the ALJ shall consider the entire longitudinal record, reevaluate the medical opinions, including Dr. Schneider and Dr. Bowes, and reevaluate whether Plaintiff meets the Listings. Additionally, Plaintiff's remaining arguments should be addressed on remand.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 27, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 30, is **DENIED**.

3. The decision of the Commissioner is **reversed** and **remanded** for additional proceedings consistent with this Order.

//
//
//
//
//
//
//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~12

4.   Judgment shall be entered in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 5th day of July 2022.

Stanley A. Bastian
Chief United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~13